IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **TAMMY A SMITH,** )<br> )<br>Plaintiff, )<br> )<br>**vs.** )<br> )<br>**SOCIAL SECURITY** )<br>**ADMINISTRATION,** )<br>**COMMISSIONER,** )<br> )<br>Defendant. )<br> ) | Civil Action Number<br>**4:12-cv-01106-AKK** |

## MEMORANDUM OPINION

Plaintiff Tammy A. Smith ("Smith") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits to Smith.

### I. Procedural History

Smith filed applications for Disability Insurance Benefits and Supplemental

Security Income on July 20, 2005, alleging a disability onset date of September 29, 2004 due to back surgery, endometriosis, pain caused by ovarian cysts, and bleeding stomach ulcers. (R. 56,78, 81). After a remand from the Appeals Council, Smith had a hearing before an ALJ. (R. 46-78). The ALJ initially denied Smith's claim, (R. 33-44), but the District Court for the Northern District of Alabama remanded the case for further administrative proceedings, (R. 562-77). On remand, the ALJ held a hearing and again denied Smith's claim, (R. 542-55), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 537-38). Smith then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1; *see also* doc. 9.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

> (1) whether the claimant is currently unemployed;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the impairment meets or equals one listed by the Secretary;
>
> (4) whether the claimant is unable to perform his or her past work; and
>
> (5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

### IV.  The ALJ's Decision

The ALJ properly applied the five step analysis and first determined that Smith has not engaged in substantial gainful activity since September 29, 2004, and therefore met Step One.  (R. 548).  The ALJ also acknowledged that Smith's degenerative disc disease with history of fusion at L4-5, obesity, headaches,

history of ulcers, hypertension, history of multiple abdominal surgeries, and history of shingles were severe impairments that met Step Two. *Id*. The ALJ proceeded to the next step and found that Smith failed to meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and thus did not satisfy Step Three. *Id*. at 549. Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Smith

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following restrictions: she can lift and carry up to 20 pounds occasionally and frequently lift or carry up to 10 pounds. She is able to in combination stand and/or walk 6 out of 8 hours, and sitting 2 to 8 hours. Pushing, pulling, reaching, handling and grasping with the arms/fingers/hands are unimpaired. She is totally precluded from climbing ladders, ropes or scaffolding. She should not work at unprotected heights or around dangerous moving, unguarded machinery. She should avoid concentrated exposure to extremes of cold, heat, wetness, and vibration.

(R. 550). With respect to the pain standard, the ALJ found that Smith's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Smith's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." *Id*. at 552. As a result, the ALJ found that Smith is capable of performing past relevant work as a waitress,

cashier, fast food worker, and retail store manager. *Id*. at 555D. Accordingly, the ALJ determined that Smith is not disabled. *Id.* at 555E; *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Smith contends that the ALJ's opinion is due to be reversed and remanded because he failed to properly apply the pain standard and erroneously rejected the opinion of Smith's treating physician. Doc. 9 at 2. For the reasons stated more fully below, the court finds that the ALJ's decision is supported by substantial evidence.

### A.  The Pain Standard

Under the pain standard, articulated more fully in section III, the ALJ may discredit the claimant's pain testimony so long as the ALJ clearly articulates the reasons for his decision and the reasons are supported by substantial evidence. *See Hale*, 831 F.2d at 1012. Based on this standard, Smith argues that the ALJ ignored objective evidence supporting her pain testimony and thus that the ALJ's reason for discrediting the testimony is not supported by substantial evidence. Doc. 9 at 2. In analyzing Smith's claim, the court begins with Smith's testimony before the ALJ and then looks to the ALJ's application of the pain standard to this testimony.

At the hearing, Smith testified that her back pain ranged from a seven to a nine on a ten point scale. (R. 821). Due to that pain, Smith stated she could only stand for ten minutes at a time, sit for fifteen to twenty minutes at a time, and walk thirty to fifty steps without rest. *Id*. Additionally, Smith testified that she cannot bend at the waist and must take pain medication that makes her so drowsy she must lie down five to six hours per day. *Id*. at 822-23. Smith also stated that she cannot raise her arms above her head or lift an object weighing more than a gallon of milk (approximately eight to nine pounds). *Id*. at 824, 26. In light of these limitations, Smith testified that she cannot drive, perform chores, prepare meals more complex than a sandwich or microwave meal, or complete personal hygiene tasks such as combing her hair. *Id*. at 824-26. Instead, Smith's brother and son do all these tasks for her. *Id*. When the ALJ asked Smith whether she could perform a job that allowed her to sit and stand as needed and would not require lifting, she responded that her pain was too severe and she could no longer move around because her "muscles [are] not working [any] more." *Id*. at 826.

In his opinion, the ALJ began by noting that all of Smith's impairments, except the anxiety and depression, satisfied prong one of the pain standard. *See* (R. 552). Specifically, the ALJ discussed the pain standard with regard to Smith's abdominal problems, hypertension, headaches, back pain, and related

musculoskeletal difficulties. *Id*. at 552-53. The ALJ went on to discredit Smith's pain testimony based on an exhaustive review of the medical record. *Id*. at 552-555C. In other words, the ALJ found that the objective medical evidence failed to support Smith's assertions of debilitating pain. The ALJ additionally discredited Smith's testimony that her medications caused severe drowsiness and that this side effect also limited her ability to work because Smith "has taken narcotic pain medications for many years now without documented report of any adverse side effects from them[.]" *Id*. at 555D.

    Smith asserts that "the medical records have consistently shown not only complaints of severe pain, but supporting medical signs and findings[,]" which the ALJ purportedly failed to address. Doc. 9 at 11. However, the ALJ explicitly discussed all the medical evidence raised by Smith in support of her contention. For example, Smith notes that Dr. Larry Parker performed a posterior lumbar interbody fusion at L4-5 on Smith and subsequently noted that Smith continued to suffer from "intractable back pain with right leg pain[.]" *Id*. at 3. However, the ALJ addressed all the medical evidence from Dr. Parker, including Dr. Parker's notes that Smith suffered from "intractable back pain *with recent decrease in her pain medication.*" *See* (R. 554-55); *see also id.* at 278. As the ALJ discussed, Smith returned for several follow up visits with Dr. Smith where she continued to

complain of pain. However, Dr. Parker opined that Smith was "doing well[,] . . . has 5+/5 motor strength in the gastrosoleus, EHL, anterior tib, quads, and iliopsoas bilaterally[;] [s]he has normal sensation to light touch and pinprick throughout all sensory dermatomes[;] [s]he has good ROM of the hips, knees, and ankles with no pain, crepitus or deformity[;]" and that x-rays "show anterior posterior fusion healing nicely." *Id*. at 231. By Smith's six month post-operation evaluation in April 2005, Dr. Parker stated that he planned "to continue to wean her pain medication . . . [and] place her on a self directed home exercise program." *Id*. According to Dr. Parker's notes, Smith herself opined that she "is pleased with the results of her surgery" and had good range of motion with no pain. *Id*. In other words, the ALJ did not fail to address the findings of Dr. Parker; rather, Dr. Parker's findings fail to support Smith's assertions of continued debilitating back pain.

Likewise, the ALJ explicitly addressed the medical reports from Huntsville Hospital and Dr. Brian M. Scholl. (R. 555). As the ALJ noted, Smith presented at Huntsville Hospital multiple times after April 2005 with complaints of back pain. However, the medical records consistently indicate that Smith's back pain was "episodic" and "moderate." *Id*. at 248-252. Despite Smith's subjective assertions regarding the pain being constant, sharp, and radiating to her leg, the medical

notes never categorize Smith's pain as severe and Smith herself stated that her pain was a 5 on a 10 point pain scale. *See id.*; *See also id.* at 359, 405-416. In fact, when Smith returned to Huntsville Hospital several times in 2006, the physical exams noted normal post-surgical changes at L4-5 with "no complications" and an MRI of her legs yielded normal results. *Id*. at 364-369, 498.

Since Smith continued to complain of pain, Huntsville Hospital referred Smith to Dr. Scholl at the Orthopedic Center. *Id*. at 445. Contrary to Smith's contention that the ALJ ignored Dr. Scholl's diagnosis of post radicular pain status post laminectomy, the ALJ did not and instead directly referenced it. *See id.* at 555. However, the diagnosis was not dispositive of the disability issue because Dr. Scholl's treatment notes go on to state that Smith's "gait is normal[;] Cervical ROM is chin to chest, extension 45 degrees, rotation 70 degrees side/side. There is a negative Spurling's or Lhermitte's[; and] lumbar ROM is fingertips to toes, extension to 30 degrees, rotation 45 degrees side/side." *Id*. at 332. Additionally, Dr. Scholl noted "no tenderness to palpation along length of throacolumbar spine, posterior iliac spine, sacroiliac joint, sciatic notch, or greater trochanters. Seated and supine straight leg raise are negative bilaterally[, and] . . . no significant imbalance in coronal or sagittal plane." *Id*. Although Dr. Scholl suggested

epidural steriod injections, this was only after informing Smith that her prior back surgery appears to have been an "adequate procedure" and that, since there is "no significant evidence of residual neuroforaminal narrowing" or "any persistent areas of compression," he could do nothing else surgically. *Id*. at 330. In other words, Dr. Scholl's treatment notes support the ALJ's findings and fail to credit Smith's testimony regarding debilitating pain and severely decreased range of motion.

Finally, Smith contends that the ALJ did not consider all the treatment notes from UAB Huntsville or Dr. Celia Turney. However, the ALJ's opinion demonstrates an exhaustive review of this medical evidence. (R. 555-55C). Based on the court's review of this medical evidence, it is clear that Smith suffered from some residual back pain and repeatedly sought treatment for such pain. However, the treatment notes from UAB Huntsville and Dr. Turney fail to support Smith's claim that this pain is so severe she cannot perform work within the RFC the ALJ assigned. When Smith presented at UAB Huntsville, her test results were normal and the doctors noted that she "is able to walk with full range of motion in extremities" despite only being able to raise her leg 45 degrees during the bilateral straight leg raising test. *Id*. at 664-65. Subsequently, UAB Huntsville switched Smith's medications because Smith reported that they were the source of her

headaches and that her pain was eased by use of lortab or over-the-counter NSAIDS such as Tylenol. *Id*. at 664, 667-68. Moreover, Dr. Turney's notes are largely comprised of Smith's subjective representations regarding her pain. *See id.* at 727-48,800B-C. Interestingly, although Smith stated that her pain was severe, Dr. Turney noted that Smith appeared to be only "mildly distressed." *See e.g.*, (R.730). Lastly, although Smith contends that Dr. Turney diagnosed her with fibromyalgia, Dr. Turney's treatment notes have question marks next to this term, indicating uncertainty as to the assessment. *See id.* Again, the ALJ did not fail to address or ignore any relevant medical findings. Accordingly, the court finds that the ALJ's decision to discredit Smith pain testimony is supported by substantial evidence.

### B.   Weighing Medical Opinions

Smith contends lastly that the ALJ erroneously rejected the opinion of Smith's treating physician, Dr. Turney, and gave great weight to the opinion of Dr. Eston G. Norwood, who performed a consultative examination. Doc. 9 at 13-14. This contention is also unavailing. Under 20 C.F.R. § 404.1527, treating source opinions are due controlling weight only when the source's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Otherwise, the treating source opinion, just as all medical opinions, is assigned weight based on several other factors such as "the treatment the source has provided and [] the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories[,]" supportability of the opinion through medical signs and laboratory findings, explanations for findings, consistency with the record as a whole, specialization of the source, and other factors that tend to support or contradict the source's opinion. 20 C.F.R. § 404.1527(c).

In this instance, the ALJ did not grant controlling weight to the Medical Source Statement (Physical) and Clinical Assessment of Pain form Dr. Turney completed because "[i]t is clear that Dr. Turney performed general and rather cursory examinations of [Smith,]" and her opinions were inconsistent with the remaining medical evidence – including the opinion of Dr. Norwood. (R. 555B). In other words, the ALJ found that Dr. Turney's opinions were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . []consistent with the other substantial evidence." *See* 20 C.F.R. § 404.1527(c)(2). The court finds that the ALJ's determination is supported by substantial evidence. A review of Dr. Turney's progress notes indicate that she

did not perform objective testing as the other treating physicians did and her findings are based largely on Smith's subjective assertions regarding the severity of her pain. Moreover, despite Smith's assertions, Dr. Turney opined that Smith appeared only "mildly distressed," which is inconsistent with her later opinion that Smith's assertions of pain were accurate and would prevent Smith from working. Dr. Turney's findings are also inconsistent with those of Smith's other treating sources, who noted that Smith's pain could be managed with medications including over-the-counter Tylenol and that Smith's range of motion and gait were largely intact. Accordingly, the ALJ properly declined to grant controlling weight to the opinions of Dr. Turney.

The ALJ also did not err in comparing Dr. Turney's opinions to those of Dr. Norwood or in granting Dr. Norwood's opinion more weight. The comparison to Dr. Norwood's report simply points out that Dr. Turney's opinion is inconsistent with the objective medical evidence. Dr. Norwood's opinion, on the other hand, is consistent with the opinions of Smith's other treating physicians. Specifically, the ALJ noted Dr. Norwood's findings of an antalgic gait (without a walking stick), good range of motion in the neck, spine and limbs, normal strength in arms and legs, good sensation and reflexes, and no physical neurologic impairments to do work-related activities. (R. 555B-C). These findings are consistent with the

records from Dr. Scholl, UAB Huntsville, Huntsville Hospital, and Dr. Parker, who all noted nearly identical findings on numerous occasions. *See* section A, *supra*. Under 20 C.F.R. § 404.1527, the ALJ properly granted weight to Dr. Norwood's opinion based on this consistency with the medical record but also because Dr. Norwood is a specialist in the field of neurology, he performed an objective examination on Smith, he explained his findings, and these findings are supportable by other medical techniques. *See* 20 C.F.R. § 404.1527(c). Accordingly, the ALJ properly granted Dr. Norwood's opinion greater weight than that of Dr. Turney and the ALJ's opinion is supported by substantial evidence.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Smith is not disabled is supported by substantial evidence and proper legal standards were used in making this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 1st day of April, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE